The next case on for argument is United States v. DiMartino. Nice to see you, Mr. Bryan. Nice to see you too, also, Judge Hall. You too, Ms. Gregory. A pleasure. A pleasure with the court, also. Good morning. May it please the court. I'm representing Mr. DiMartino, and I'd like to talk to the court about the issue of whether it was a correct finding to impose the obstruction of justice enhancement. Now, at the outset, I do recognize that we're here on an issue that has a high standard of review, and that is we're talking about a factual finding that on appeal must be found to be clearly erroneous. The question in the core of the allegation here is that Mr. DiMartino requested of a friend, a Ms. Nucci, that the child's father sign a letter saying that Mr. DiMartino had never been alone with his son. Having already said that he had been, right? Or am I misunderstanding? According to Ms. Nucci, and Ms. Nucci testified, was called by the government here. After Mr. DiMartino was arrested on this allegation, a day after, she specifically, with someone else, contacted the child's father and questioned him whether Mr. DiMartino had ever been alone with his son. And he said he had never been alone. And Ms. Nucci said that they consistently asked him that question over a period of time. His, this evidence here, in terms of the child's father, then changed when he was interviewed by the FBI and assistant U.S. attorney. And in that, and the FBI agent who testified at the hearing said that initially in that hearing he said that the child had never been alone with Mr. DiMartino. Then subsequent to that was a statement made to Mr. DiMartino saying, God bless you, saying that if you lie to us, that is a crime. And also that there were, they had witnesses that he had been alone with the child. Now, all I can say is when the sentencing hearing was held, there were no other witnesses. Roberts. I know, but the district court was entitled to credit, even though it was through the task force officer, the fact that he admitted on more than one occasion the child was alone with Mr. DiMartino, right? Are you suggesting the district court didn't have the ability, after having a hearing, to credit that based upon the quality of the evidence? Yes. Well. There were text messages that supported that, right? Well, the text messages did not support that. Actually, what, if we look at Ms. Nucci's testimony here, she clearly said that Mr. DiMartino never asked for the child's father to issue this letter. She said that what he asked for was a character reference. The text messages, and this is where the government and I think. You're mixing two things. The first is whether or not the district court could have found that the child was alone with Mr. DiMartino. That's fact number one, right? Right. Fact number two is whether he could have also found that your client asked that this letter be prepared, right? Those are two separate things. So I was focusing on the first one, which is there seems to be, and this is going to be a clearly erroneous ruling. The judge had a hearing. He didn't accept one side. He had a hearing, took all the evidence in, and came to that conclusion. So I'm not sure where we would find error in that, evaluating the totality of the evidence and the witnesses. Ms. Nucci testified, right? She did.   And Ms. Nucci's testimony strongly supports Mr. DiMartino's position. No, but the district court doesn't have to accept that, right? Yes. You examine the demeanor. You examine the other evidence, right? True. Where it really comes down to, frankly, it does come down to, and the only, as I review this record, the only source of evidence and support for the finding is going to be the recantation statements of the child's father during the interview. We have. Excuse me, on that. Yes. Isn't there's what was the relationship between that and the telephone bill? Maybe you can, you know, offer to pay your telephone bill? Oh, yes. And there is another. There was an attempt to explain that there was an exchange of benefits for the child's father agreeing to give this letter. Now that's certainly the district court was entitled to take that into consideration. No. Well, again, the testimony here about what happened with the why those benefits were offered, those benefits were already being given while Mr. DiMartino and the child's father were not, you know, out. I thought there was an offer of them. There. The testimony by Ms. Nucci was that this was a continuation, a concern by Mr. DiMartino of wanting to still care for him because he was really a person who had great trouble in caring for himself, and that these benefits had been given while they were still in relationship, and then wanted them to continue while he was still incarcerated. I think really, again, this is my analysis of the record here, and it is, is it enough that the child's father recanted and then said, no, this is not true? The child was alone with him on two occasions. I think, and this is the analysis, and again, I recognize, we're talking about the forensic interviewer as well, right? Yes. Based on the interview of the child, so there was that as well, right? Well, the judge, and on that score, the judge then also looked at the video of that interview and said, I'm not comfortable with saying that what that, essentially what that interviewer found was, could be relied on. Deferring whether there was molestation or not, right? But not about. Yeah. Well, that interview really didn't get into this whole thing of whether this offer was made or not. And so, again, where is the evidence on that? And it really comes down to testimony of, well, testimony of Nucci and then the statement, and I think that there's another factor here. We're talking about the child's father did not testify at the hearing. Child's father was called, took the fifth. The government then did not give the child, the child's father immunity to testify. So what the argument here is, is that you have a real problem in terms of the reliability of that testimony. We have 6A1.3 under the sentencing guidelines that there has to be this indicia of reliability of. You have a very detailed statement, the recantation, where he gives details of two But, again, I think inferences could be drawn both ways from that. So. And I appreciate, Judge Bianco, exactly what you're saying. And I think where it goes to is, does this, does this evidence that we're talking about, is it sufficient, does it meet this high bar of clearly erroneous? I'm making the argument it does. The second issue of him directing that the letter be submitted, right? Yes. I think you're objecting to that as well, right? That there was no evidence that your client asked for this second letter to be. Yes. And I think that's the core of, as I read the judge's basis for the award of the obstruction of justice enhancement, it was, was that request for this letter given or not? And Ms. Nucci testified that she was, that your client asked for the first letter,  Yes. We know that. Character reference letter, yes. And then she said he didn't ask for the second letter because this woman, Emily, asked for it or suggested it at the library, right? Correct. That's what she testified to. Correct. In fact, the text message from her, not to the father, not to your client, but to the father, before the library, before they met at the library, she says, then another letter about his interaction with the child, where he picked you guys up from, where you went, and how he wasn't alone with them. Yes. So why couldn't the judge conclude, make the inference, Ms. Nucci talked to your client about the first letter. She denied that he asked for the second letter or that she had any part in that suggestion, when, in fact, the text message just completely refutes her chain of events. Well, I'm glad you asked for that, you addressed that, because I have looked at it. That's in the government's brief. Essentially what it comes down to is, and I think the government's analysis is right, the Nucci's, who was called by the government, statement that Latke was the one to come up with the idea of the second letter, and it does not square with the text message, which indicates, because it's Nucci sending the text message to the child's father, and in that text message referring to a second letter. So obviously, and those text messages happened, even if you then say, and here's the thing, even if you then say, you would have to say, first of all, what is the extent of that inconsistency? And it is, of course, that it couldn't, you would say, all right, it was not Latke. It was Ms. Nucci's idea. We'd have to conclude, not we, the district court, would have had to be prohibitive from concluding that she didn't do that on her own, but that your client asked for it, that Ms. Nucci didn't on her own think about this second letter and this issue and how important it was, that your client, because you were there talking about the first letter, also suggested this. I would say that's, that next step to whether it was then Mr. DiMartino who asked Nucci to do it, there, I would submit there's not a sufficient evidentiary connection to that. It's Nucci. I would say not, because there's other. I'm sorry? It's impermissible? I would say it's speculative. And therefore, it doesn't, I'm saying it doesn't meet the 6A1.3 standard of indicia reliability. Now, I know that in a sentencing hearing, rules of evidence are out, but it still has that base standard, and that's really where the argument is. I know I'm arguing a tough, tough issue, but I am, I think, giving you the best view of this for you to consider. Thank you, Mr. Burke. Thank you. You reserve two minutes for rebuttal, and we'll hear from Ms. Gregory. Good morning, and may it please the Court. Katherine Gregory, Assistant U.S. Attorney representing the government in this matter. Just starting with the obstruction enhancement, as this Court well knows, the district court is subject to clear error review. And here, the district court did do the appropriate thing by holding a hearing before it made those findings. At that hearing, the district court was able to see the witnesses for itself, hear the testimony, and evaluate the evidence, both testimonial and documentary, before it, including, as Your Honors mentioned, the jail call between the appellant and Ms. Nucci, in which she refers to the father of her, of the child as her little buddy, and that she's making sure that he's doing what he needs to be doing, and that he has everything he needs. And as is laid out in our brief, the timeline shows that, for example, the phone bill, the father's phone bill wasn't paid until after he had written that second letter. The district court also saw the text messages that were introduced, where Ms. Nucci specifically asks for the second letter, where that would include what the district court later determined to be a lie, that the appellant was never alone with the child. And finally, the agent's testimony regarding the father's recanting of that second letter. So after hearing all of this, the district court did make findings that were supported by a preponderance of the evidence. It seems here that the appellant's not alleging a significant procedural error, such as treating the guidelines as mandatory or failing to make guidelines calculations at all. It seems that the appellant is just taking issue with the factual findings, which in this case are not clearly erroneous. And additionally, that apparently the district court failed to use the word willful when it was making those findings, but as this Court has repeatedly held, there are no magic words at sentencing. And here the appellant has failed to show that the findings were clearly erroneous and there's no basis to disturb the application of the enhancement. I would just like to briefly address the substantive reasonableness. As this Court, again, is well aware, substantive unreasonableness is meant to be a backstop for those few cases where the sentence would be shockingly high or unsupportable as a matter of law. And here, with well over 20,000 images and an appellant who was flagrantly disregarding the terms of his release and where the district court actually says at sentencing, I wouldn't have given you the benefit of the doubt that you got from the magistrate judge about your initial possible violation, that 125 months, which was within the Guideline's recommendation, is substantively, shockingly high or substantively unreasonable. And if the panel has no further questions? Roberts. Would you just remind, what was the Guideline range? I believe within offense level 32, criminal history category 1, the range was 121 to 151 months. Thank you. Mr. Bryant, anything further? Only one brief remark, and that is simply, and I think it's, if this Court were to find that the obstruction of justice enhancement was not, was clearly erroneous, then, of course, it would affect the substantive reasonableness of the sentence. It would change. And I know you've told us this, but what would it reduce the range to if you? Well, I mean, for example, the plea agreement here stated it contemplated a Guideline calculation range, I believe it was 78 months to 95 months. And then it was the obstruction conduct that resulted in the higher Guideline calculation and sentence. Thank you. Thank you both for your arguments. We'll reserve decision in this case. The remaining four cases on the calendar, which I will not recite by name, are on submission. So I will ask the Clerk please to adjourn the Court. The Court is adjourned. The Court is adjourned. Have a nice weekend, all.